**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **BX LED LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No.** |
| **v.** | § | |
| | § | |
| **ASUSTEK COMPUTER INC.,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| *Defendant.* | § | |
| | § | |
| | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff BX LED LLC ("BX" or "Plaintiff"), by and through the undersigned counsel, hereby asserts the following claims for patent infringement against Defendant Asustek Computer Inc. ("ASUS" or "Defendant"), and alleges as follows:

### SUMMARY

1.      Plaintiff is the owner by assignment of all right, title and interest in United States United States Patent Nos. 6,869,812; 7,901,109; and 8,203,260 (collectively, the "Patents-in-Suit").

2.      Defendant infringes the Patents-in-Suit at least by selling, without authorization, Plaintiff's proprietary technologies in a number of their commercial products including, *inter alia*, the ASUS TF120 RGB Fan, ASUS VG248QG Gaming Monitor, ASUS ZenBeam E2 Projector, ASUS ROG Aura Monitor Light Bar ALB01, and other substantially similar products (collectively, the "Accused Products"). These Accused Products are marketed, offered, and distributed throughout the United States, including in this District.

3.      By this action, Plaintiff seeks to obtain compensation for the harm Plaintiff has suffered, and will continue to suffer, as a result of Defendant's infringement of the Patents-in-Suit.

## NATURE OF THE ACTION

4.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5.      Defendant has infringed and continues to infringe, and at least as early as the filing and/or service of this Complaint, has induced and continues to induce infringement of, and has contributed to and continues to contribute to infringement of, one or more claims of Plaintiff's Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in the United States, including in this District, and/or by importing the Accused Products into the United States.

6.      Plaintiff is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Plaintiff seeks monetary damages for Defendant's infringement of the Patents-in-Suit.

## THE PARTIES

7.      Plaintiff BX LED LLC is a Texas limited liability company with its principal place of business at 17330 Preston Road, Suite 200D, Dallas, Texas 75252. Plaintiff is the owner of the intellectual property rights at issue in this action.

8.      On information and belief, Defendant Asustek Computer Inc. is a corporation organized and existing under the laws of Taiwan that maintains an established place of business at No. 15, Li-Te Rd., Beitou District, Taipei 112, Taiwan, and may be served with process by serving it directly at its established place of business in Taiwan or via its alter ego and de facto agent in the United States, Asus Computer International, at 44370 Nobel Drive, Fremont, California 94538.

9.      On information and belief, Defendant, through its online store, directly and/or indirectly distributes, markets, offers to sell, and/or sells the Accused Products in the United States and/or import the Accused Products into the United States, including in the Eastern District of

Texas, and otherwise direct infringing activities to this District in connection with the Accused Products.

## JURISDICTION AND VENUE

10.     As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over Defendant because Defendant has (i) availed themselves of the rights and benefits of the laws of the State of Texas, (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of Texas (and in this District), (iii) derived substantial revenue from the sales and/or use of products, such as the Accused Products, in the State of Texas (and in this District), (iv) purposefully directed activities (directly and/or through intermediaries), such as marketing, shipping, distributing, offering for sale, selling, and/or advertising the Accused Products, at residents of the State of Texas (and residents in this District), (v) delivered Accused Products into the stream of commerce with the expectation that the Accused Products will be used and/or purchased by consumers in the State of Texas (and in this District), and (vi) committed acts of patent infringement in the State of Texas (and in this District).

12.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), as Defendant is not a resident of the United States and the sales, offers to sell, and importation of the Accused products giving rise to the claim of patent infringement have occurred in this District.

## PATENTS-IN-SUIT

### U.S. Patent No. 6,869,812

13.     U.S. Patent No. 6,869,812 (the "'812 Patent") is titled "High power AllnGaN based multichip light emitting diode" and was issued on March 22, 2005. A true and correct copy of the '812 Patent is attached as Exhibit A.

14.     The '812 Patent was filed on May 13, 2003, as U.S. Patent Application No. 10/438,108.

15.     Plaintiff is the owner of all rights, title, and interest in and to the '812 Patent, with the full and exclusive right to bring suit to enforce the '812 Patent, including the right to recover for past infringement.

16.     The '812 Patent is valid and enforceable under United States Patent Laws.

17.     The '812 Patent recognized problems with existing light emitting diodes at the time of the invention of the '812 Patent.

18.     For instance, the inventors of the '812 Patent recognized that prior art light emitting diodes had issues of insufficient illumination and poor efficiency, limiting their ability "to function in some applications, such as providing general illumination, *e.g.*, ambient lighting." '812 Patent at 1:24-31. Prior attempts to address these issues involved the use of multiple LEDs and/or larger device sizes. *See id*. at 1:38-45, 2:16-18.

19.     The use of larger device sizes introduced other impediments towards efficiency, *e.g.*, lower light extraction efficiency relative to smaller devices. *See id*. at 2:61-65. Light extraction efficiency refers to the issue that when light is generated in an LED, some light fails to escape the device, because "as the device size increases, light has a tendency to bounce more and thus travel a longer distance before exiting the device, resulting in increased light loss," whereas "light tends to bounce fewer times in a smaller device and thus travels a shorter distance." *See id*.

at 3:12-16.

20.    The inventors of the '812 Patent recognized that it was "desirable to minimize the number of bounces and the total travel distance before light can escape for any light transmissive layer of an LED." *See id*. at 3:9-11.

21.    In view of the foregoing, among other advantages over the prior art, the inventions claimed by the '812 Patent provide the benefits of "superior light output efficiency" over the prior art by way of an active surface with elongated geometry. *See id*. at 11:46-48. With elongated geometry, "light can easily escape from the long dimension side, thus substantially enhancing the brightness of the device. The elongated configuration of the LED chip also enhances heat dissipation, thus allowing the device to be operated at higher current levels to facility further enhancement of the light output thereof, as well as for improvement of the efficiency thereof." *See id*. at 8:62-9:3.

## U.S. Patent No. 7,901,109

22.    U.S. Patent No. 7,901,109 (the "'109 Patent") is titled "Heat sink apparatus for solid state lights" and was issued on March 8, 2011. A true and correct copy of the '109 Patent is attached as Exhibit B.

23.    The '109 Patent was filed on June 30, 2008, as U.S. Patent Application No. 12/165,563.

24.    Plaintiff is the owner of all rights, title, and interest in and to the '109 Patent, with the full and exclusive right to bring suit to enforce the '109 Patent, including the right to recover for past infringement.

25.    The '109 Patent is valid and enforceable under United States Patent Laws.

26.    The '109 Patent recognized problems with existing solid state lights at the time of invention.

27.    For instance, the '109 Patent recognized that the "operational power of many current solid state lights, such as light-emitting diode (LED) lights, is often limited by the solid state lights' ability to dissipate heat." '109 Patent at 1:11-13. "Accordingly, increasing the ability of a solid state light to dissipate heat allows for higher power, and thus brighter, more efficient solid state lights." *Id*. at 1:18-20.

28.    In view of the foregoing, the '109 Patent discloses, in one embodiment, "a heat sink apparatus for a solid state light" that "comprises a heat sink comprising a first end configured for connection to a solid state light, a second end opposite the first end, and a heat dissipating portion between the first end and the second end. The heat dissipating portion has an elongated portion and a plurality of fins for dissipating heat generated by the solid state light, the fins extending from the elongated portion." *Id*. at 1:27-34. Through this, and other disclosed embodiments, the '109 Patent offers advantages of, *inter alia*, increasing the heat dissipation, power, brightness, and efficiency of solid state lighting over the prior art.

**U.S. Patent No. 8,203,260**

29.    U.S. Patent No. 8,203,260 (the "'260 Patent") is titled "Color temperature tunable white light source" and was issued on March 14, 2006. A true and correct copy of the '260 Patent is attached as Exhibit C. The '260 Patent was filed on April 13, 2007 as U.S. Patent Application No. 11/787,107.

30.    Plaintiff is the owner of all rights, title, and interest in and to the '260 Patent, with the full and exclusive right to bring suit to enforce the '260 Patent, including the right to recover for past infringement.

31.    The '260 Patent is valid and enforceable under United States Patent Laws. The '260 Patent recognized problems with existing light emitting devices at the time of the invention of the '260 Patent.

32.    For instance, the '260 Patent describes apparatuses, absent in the prior art, that provide a tunable white light source. *See*, *e.g.*, '260 Patent at 2:15-17. The '260 Patent recognized that traditional white light sources emitted white light at a relatively fixed color temperature, such as "warm white light" having a color temperature of approximately 3000 Kelvin (K), in the case of incandescent lighting, and "cold white light" having a color temperature of approximately 7000K, in the case of fluorescent lighting. *See id*. at 1:20-24. At the time of the '260 Patent, white LED lighting was a relatively recent innovation and had similar limitations to traditional white light sources. *Id*. at 1:13:29.

33.    The '260 Patent recognizes that the prior art comprised systems and methods wherein LED white light was generated within a predetermined portion of the visible spectrum, for example, 400nm-700nm wavelength range, and using a significant number (e.g., "three hundred LEDs each of which has a narrow spectral width," in one example) of LEDs to achieve any tunability within that spectrum. *See id*. at 1:55-65. Considering the narrow visibility spectrum of white light produced by these sources, the unwieldy number of LEDs required to provide tunability, and/or the need for cumbersome filters to obtain tunability, there was a need in the prior art for methods and devices that provided sources of white light that were tunable across the color temperature and visible spectrum with a minimal number of LED arrays. In addition, there was particular need to further increase the operating life and lower the power consumption of lighting devices, including LED lighting. *See*, *e.g*., *id*. at 1:46-49; 2:61-64.

34.    The inventions claimed by '260 Patent address these limitations by describing an apparatus with two LED arrangements wherein the first LED arrangement emits light of a first wavelength range, and the second emits light of a second wavelength range such the combination of the two appears white. *See*, *e.g.*, *id*. at 2:21-28. The first and second LED arrangements also contained respective means for controlling their relative outputs. *See*, *e.g*., *id*. For example, in one

described embodiment, the color temperature of the two LEDs could be tuned by controlling the relative magnitude of the drive currents of the LEDs using, for example, a potential divider arrangement. *See id*. at 2:50-52.

35.     The inventors of the '260 Patent recognized several advantages of the claimed inventions over the prior art, including wide application in a variety of commercial and domestic lighting applications, without the necessity to manufacture different lights of various static, or highly limited, color temperatures and visibility spectrum output for different applications. *See, e.g.*, *id*. at 8:51-53. The invention is also particularly advantageous in applications where visibility may be impaired with changing environmental conditions such as fog, dust, or smoke, such that the LED lighting can be tuned to the level of optimal visibility. *See, e.g*., *id*. at 3:49-53; 8:53-56. The invention further has the advantage of minimizing the number of LED arrangements necessary to achieve tunability across a broad color temperature spectrum, thus improving efficiency in power consumption and reducing manufacturing cost. *See, e.g.*, *id*. at 2:61-65.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,869,812

36.     Plaintiff incorporates by reference and re-alleges paragraphs 1-35 of the Complaint as if fully set forth herein.

37.     Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '812 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the ASUS TF120 RGB Fan, the ASUS VG248QG Gaming Monitor, and other substantially similar products (collectively, the "'812 Accused Products").

38.     By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '812 Patent by the '812

Accused Products. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '812 Accused Products that it obtains during discovery.

39.     *1(a): A light emitting diode chip comprising*:— The ASUS TF120 RGB Fan and ASUS VG248QG Gaming Monitor comprise a "light emitting diode chip," as recited in claim 1:

*ASUS TF120 RGB Fan*







Product Page                    LED Package                         LED Chip

*ASUS VG248QG Gaming Monitor*







Product Page                    LED Package                         LED Chip

40.     *1(b): a substantially transparent substrate;*— The ASUS TF120 RGB Fan and ASUS VG248QG Gaming Monitor comprise a "substantially transparent substrate," as seen in the below images where the transparent substrate is annotated in red:



*ASUS TF120 RGB Fan*



*ASUS VG248QG Gaming Monitor*

41.    ***1(c): An active region formed upon the substrate; and;*—** The ASUS TF120 RGB Fan and ASUS VG248QG Gaming Monitor comprise an "active region formed upon the substrate," as seen in the below images:





*ASUS TF120 RGB Fan*





*ASUS VG248QG Gaming Monitor*

42.    ***1(d): Wherein an aspect ratio of the active area is greater than approximately 1.5 to***

***1.***— The ASUS TF120 RGB Fan and ASUS VG248QG Gaming Monitor comprise an active

region wherein the aspect ratio is greater than approximately 1.5 to 1.

*ASUS TF120 RGB Fan*



*ASUS VG248QG Gaming Monitor*



The aspect ratio of the active regions of the light emitting diode chips in the ASUS TF120

RGB Fan and ASUS VG248QG Gaming Monitor are greater than 1.5 to 1. Specifically, the aspect

ratios, as derived from the millimeter (mm) measurements taken from above images, are:

|  | L1 (long side) | L2 | Aspect Ratio (L1/L2) |
|---|---|---|---|
| ASUS TF120 RGB Fan | 0.25 mm | 0.15 mm | 1.67 |
| ASUS VG248QG Gaming Monitor | 0.85 mm | 0.41 mm | 2.07 |

43.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '812 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '812 Patent under 35 U.S.C. § 271(c).

44.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '812 Patent while being on notice of (or willfully blind to) the '812 Patent. For instance, Defendant has supplied and continues to supply the '812 Accused Products to customers (e.g., end users and/or distributors of the '812 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '812 Patent.

45.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '812 Patent. As one example, Defendant promotes, advertises and instructs customers or potential customers about the '812 Accused Products and uses of the '812 Accused Products. *See*, *e.g.*, https://www.asus.com/us/motherboards-components/cooling/tuf-gaming/tuf-gaming-tf120-argb-fan-single-pack/; https://www.asus.com/us/displays-desktops/monitors/gaming/vg248qg/.

46.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '812 Patent. For instance, Defendant knows (and/or has known) of the existence of the '812 Patent or at least should have known of the existence of the '812 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '812 Patent since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. And, as a result of its knowledge of the '812 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '812 Patent by Defendant's customers. On information and belief,

Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '812 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '812 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

47.     Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '812 Patent by offering for sale, selling, and/or importing one or more components in connection with the '812 Accused Products that contribute to the direct infringement of the '812 Patent by customers of the '812 Accused Products. As set forth above, Defendant has had actual knowledge of the '812 Patent or is willfully blind to its existence since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '812 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '812 Patent. Defendant has supplied (and/or continues to supply) the '812 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '812 Patent by using the '812 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

48.     At least as early as when Defendant received Plaintiff's Notice Letter, Defendant's infringement of the '812 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

49.     Additional allegations regarding Defendant's knowledge of the '812 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

50.     Defendant's infringement of the '812 Patent is exceptional and entitles Plaintiff to

attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

51.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '812 Patent.

52.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '812 Patent, including, without limitation, a reasonable royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,901,109

53.    Plaintiff incorporates by reference and re-alleges paragraphs 1-52 of the Complaint as if fully set forth herein.

54.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '109 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the ASUS ZenBeam E2 Projector, among other substantially similar products (collectively, the "'109 Accused Products").

55.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 10 of the '109 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '109 Accused Products that it obtains during discovery.

56.    ***10(a): A solid state light assembly, comprising:***—The ASUS ZenBeam E2 Projector is a solid state light assembly:

 

*ASUS ZenBeam E2 Projector*

57.    *10(b): a solid state light; and—* The ASUS ZenBeam E2 Projector comprises a

solid state light:



*ASUS ZenBeam E2 Projector*

58.    *10(c): a heat sink integrally affixed to the solid state light, the heat sink comprising*

*at least one fin for dissipating heat generated by the solid state light.-* The ASUS ZenBeam E2

Projector has a heat sink integrally affixed to the solid state light:



*This heat sink comprises a plurality of fins for dissipating heat generated by the solid state light:*



59.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '109 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '109 Patent under 35 U.S.C. § 271(c).

60.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or

encouraging customers to directly infringe one or more claims of the '109 Patent while being on notice of (or willfully blind to) the '109 Patent. For instance, Defendants have supplied and continue to supply the '109 Accused Products to customers (e.g., end users and/or distributors of the '109 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '109 Patent.

61.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '109 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '109 Accused Products and uses of the '109 Accused Products. *See*, *e.g.*, https://www.asus.com/us/displays-desktops/projectors/portable/zenbeam-e2/?awc=31828_1750819084_7b6725c554a8fa86af8bf76b772c431f.

62.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '109 Patent. For instance, Defendant knows (and/or has known) of the existence of the '109 Patent or at least should have known of the existence of the '109 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '109 Patent since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter And, as a result of their knowledge of the '109 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '109 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '109 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '109 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

63.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '109 Patent by offering for sale, selling, and/or importing one or more components in connection with the '109 Accused Products that contribute to the direct infringement of the '109 Patent by customers of the '109 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '109 Patent or are willfully blind to its existence since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. Further, Defendants offers for sale, sells, and/or import sone or more components in connection with the '109 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '109 Patent. Defendant has supplied (and/or continues to supply) the '109 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '109 Patent by using the '109 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

64.    At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '109 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

65.    Additional allegations regarding Defendant's knowledge of the '109 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

66.    Defendant's infringement of the '109 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

67.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '109 Patent.

68.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained

as a result of Defendant's infringement of the '109 Patent, including, without limitation, a reasonable royalty.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,203,260

69.    Plaintiff incorporates by reference and re-alleges 1-68 of the Complaint as if fully set forth herein.

70.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '260 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the ASUS ROG Aura Monitor Light Bar ALB01, among other substantially similar products (collectively, the "'260 Accused Products").

71.    As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '260 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '260 Accused Products that it obtains during discovery.

72.    ***1(a): A color temperature tunable white light source, the source comprising:***— The '260 Accused Products are color temperature tunable white light sources, as seen below:



*ASUS ROG Aura Monitor Light Bar*

73.     ***1(b): an array of first LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 2500 K to 4000 K and;***—The ASUS ROG Aura Monitor Light Bar ALB01 comprises an array of first LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 2500 K to 4000 K.



*ASUS ROG Aura Monitor Light Bar*

74.     ***1(c): second LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 6000 K to 10,000 K–*** The ASUS ROG Aura Monitor Light Bar ALB01 comprises second LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 6000 K to 10,000 K.




Second LED arrangement operable to emit white light with a CCT between 6000k and 10000k.

*ASUS ROG Aura Monitor Light Bar*

75.     ***1(d): wherein the LED arrangements are configured such that a composite light is emitted by the array;—*** The ASUS ROG Aura Monitor Light Bar ALB01 is configured to emit a composite light. For example, as seen in the images for limitation 1(a), the LED arrangements are tunable and placed next to each other so that the Warm White LED arrangement and the Cool White LED arrangement emit a composite light (e.g. a uniform white color temperature).

76.     ***1(e): wherein the relative drive currents of the first and second LED arrangements are controllable, and thus variable in relative magnitude, such that the color correlated temperature of the composite light emitted by the array is electrically tunable***—As seen from the above juxtapositions of the LED arrangements and mobile application screenshots in limitations 1(b) and 1(c), the color correlated temperature of the composite light emitted by the array is electrically tunable and such tuning is accomplished by way of controlling the relative drive currents and thus relative magnitudes of the first and second LED arrangements.

77.     Additionally, Defendant has been and/or currently is an active inducer of infringement of the '260 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '260

Patent under 35 U.S.C. § 271(c).

78.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '260 Patent while being on notice of (or willfully blind to) the '260 Patent. For instance, Defendant has supplied and continues to supply the '260 Accused Products to customers (e.g., end users and/or distributors of the '260 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '260 Patent.

79.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '260 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '260 Accused Products and uses of the '260 Accused Products. *See, e.g.*, https://rog.asus.com/us/monitors/accessories/rog-aura-monitor-light-bar-alb01/.

80.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '260 Patent. For instance, Defendant knows (and/or has known) of the existence of the '260 Patent or at least should have known of the existence of the '260 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '260 Patent since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. And, as a result of its knowledge of the '260 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '260 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '260 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '260 Patent but has

taken (and/or took) deliberate actions to avoid learning of those facts.

81.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '260 Patent by offering for sale, selling, and/or importing one or more components in connection with the '260 Accused Products that contribute to the direct infringement of the '260 Patent by customers of the '260 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '260 Patent or is willfully blind to its existence since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '260 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '260 Patent. Defendant has supplied (and/or continues to supply) the '260 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '260 Patent by using the '260 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

82.    On information and belief, at least as early as the filing and/or service of this Complaint, Defendant's infringement of the '260 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

83.    Additional allegations regarding Defendant's knowledge of the '260 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

84.    Defendant's infringement of the '260 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

85.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '260 Patent.

86.     Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '260 Patent, including, without limitation, a reasonable royalty.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A.     That Judgment be entered that Defendant has infringed at least one or more claims of the Patents-in-Suit, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B.     An award of damages sufficient to compensate Plaintiff for Defendant's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendant's willful infringement;

C.     That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees;

D.     Costs and expenses in this action;

E.     An award of prejudgment and post-judgment interest; and

F.     Such other and further relief as the Court may deem just and proper.

Date: August 25, 2025                  Respectfully submitted,

**PLATT RICHMOND PLLC**

*/s/ Matthew C. Acosta*
Matthew C. Acosta
Texas Bar No. 24062577
macosta@pcrfirm.com
1201 N. Riverfront Blvd., Suite 150
Dallas, Texas 75207
214.559.2700 Main
214.559.4390 Fax

**COUNSEL FOR PLAINTIFF**
**BX LED LLC**